ALLISON, Plaintiff in error, v. STATE, Defendant in error.*

*No. State 17. Argued October 31, 1973.—Decided February 5, 1974.*
(Also reported in 214 N. W. 2d 437.)

* Motion for rehearing denied, without costs, on May 7, 1974.

16

For the plaintiff in error there were briefs by *Anthony K. Karpowitz,* Legal Aid Society of Milwaukee, and oral argument by *Lawrence E. Norton II,* Legal Aid Society of Milwaukee.

For the defendant in error the cause was argued by *Christine M. Wiseman,* assistant attorney general, with whom on the briefs was *Robert W. Warren,* attorney general.

WILKIE, J. This case involves a challenge to the Wisconsin "notice-of-alibi" statute in effect at the time of this offense, sec. 955.07, Stats. 1967,[1] under the United States Supreme Court case of *Wardius v. Oregon.*[2] It also involves the constitutionality of sec. 971.23 (8),[3] the alibi statute as adopted in 1970 after the incident that is the basis of the conviction here.

Before discussing the "notice-of-alibi" subject, two other preliminary issues should be considered.

1. Should the complaint have been dismissed for failure to set forth facts from which the magistrate could make an independent determination of the reliability of the informant who provided the affiant with the information leading to the complaint?

2. Did the trial court abuse its discretion in finding that no "cause" was shown which entitled the defendant to present alibi evidence despite lack of compliance with the notice requirement of sec. 955.07, Stats. 1967?

---

[1] Sec. 955.07, Stats. 1967. "**Alibi to be pleaded.** In courts of record, if the defendant intends to rely upon an alibi as a defense, he shall give to the district attorney written notice thereof on the day of arraignment, stating particularly the place where he claims to have been when the crime is alleged to have been committed together with the names and addresses of witnesses to his alibi, if known to the defendant. In default of such notice, evidence of the alibi shall not be received unless the court, for good cause shown, shall otherwise order."

[2] (1973), 412 U. S. 470, 93 Sup. Ct. 2208, 37 L. Ed. 2d 82.

[3] Sec. 971.23, Stats. "(8) NOTICE OF ALIBI. (a) If the defendant intends to rely upon an alibi as a defense, he shall give written notice thereof to the district attorney at the arraignment or at least 20 days before trial stating particularly the place where he claims to have been when the crime is alleged to have been committed together with the names and addresses of witnesses to the alibi, if known.

"(b) In default of such notice, no evidence of the alibi shall be received unless the court, for cause, orders otherwise.

"(c) The court may enlarge the time for filing a notice of alibi as provided in par. (a) for cause."

*Sufficiency of the complaint.*

The complaint in this case was issued on April 27, 1970. The affiant, Dennis Forjan, is a police officer, although he is not identified as such on the complaint. Officer Forjan swore on information and belief that Walter Allison, Jr., had committed the crimes of rape and sexual perversion as defined by the appropriate statutes. Then the complaint detailed the source of the information as follows:

"Complainant further states that his information is based upon the statement of J——— M——— K———, age 16, who states that on 4/24/70, the defendant while parked in an auto on the north side of Milwaukee, she observed the defendant place a butcher knife to her throat and remove her clothing and placed his penis in her vagina, she then observed defendant place his penis in her mouth. J——— M——— K——— further states that when defendant placed said knife to her throat he told her if she screamed, he would kill her. J——— M——— K——— further states she was not the lawful wife of defendant at the time of said acts above referred to."

As the trial court observed, this is hardly a model complaint, but it refused to grant a pretrial motion to dismiss the complaint. The defendant contends in his brief that the complaint is deficient because it fails to verify in any way the reliability or credibility of the alleged victim. It is clear from the statement of facts that the complaint could have contained information on the identification of the defendant and the finding of the knife and barrette in his car which fit the description given by both girls. The defendant argues that absent such independent verification of the statement of the informant the complaint is constitutionally insufficient for failing to establish probable cause.

Although a complaint in a criminal case may contain hearsay information and need not reflect the direct

personal observation of the affiant (the police officer here), the magistrate must be informed of some of the underlying circumstances relied on by the person providing the information and some of the underlying circumstances from which the affiant concluded that the informant was creditable or her information reliable.[4] This is said to be the two-pronged test of *Aguilar*. In *Spinelli*[5] the United States Supreme Court reaffirmed the two "tests" of *Aguilar* but indicated that a "tip" which does not meet the *Aguilar* tests can be raised to that level of reliability by other information corroborating the tip.

A different rationale exists for establishing the reliability of named citizen informers as opposed to the traditional idea of unnamed police contacts or informers who are usually criminals themselves.[6]

". . . Information supplied to officers by the traditional police informer is not given in the spirit of a concerned citizen, but often is given in exchange for some concession, payment, or simply out of revenge against the subject. The nature of these persons and the information which they supply conveys a certain impression of unreliability, and it is proper to demand that some evidence of their credibility and reliability be shown. One practical way of making such a showing is to point to accurate information which they have supplied in the past."[7]

However, this averment of prior reliability is not available with citizen or victim informers who are usually having their first contact with police. "Rather, the reliability of such a person should be evaluated from the nature of his report, his opportunity to hear and

[4] *Aguilar v. Texas* (1964), 378 U. S. 108, 114, 115, 84 Sup. Ct. 1509, 12 L. Ed. 2d 723; *Spinelli v. United States* (1969), 393 U. S. 410, 89 Sup. Ct. 584, 21 L. Ed. 2d 637.

[5] *Supra*, footnote 4, at page 413.

[6] *State v. Paszek* (1971), 50 Wis. 2d 619, 184 N. W. 2d 836.

[7] *Id.* at page 630.

see the matters reported, and the extent to which it can be verified by independent police investigation." [8] This court in the *Paszek Case,* however, indicated that even with a citizen informer there must be some safeguard. The court indicated this can be satisfied by verification of some of the details of the information reported. The defendant in this case relies principally on the *Paszek Case* to argue that there had to be some averment of the verification of some factual details of the rape victim's statement. The *Paszek Case* does not require verification, it merely says that verification will be sufficient safeguard.

In *State v. Knudson* [9] this court recognized that in the case of a citizen informer the search for reliability "is shifted to the second prong of the *Aguilar* test, *i.e.,* from personal reliability to 'observational' reliability." In *Knudson* the court relied on the statement in the *Knudson* complaint that the defendant had been apprehended pursuant to the victim's description. The defendant in the present case points out the lack of any such averment in the present complaint. The state here points out, however, that the present complaint was issued before the defendant's arrest and so could not contain such an averment. But it could have contained an averment about the recovery of the personal items from the vehicle of the defendant which fit the description of the car given to police by the victim. However, the last statement in the *Knudson Case* is more general:

"The end result here is to approve a complaint signed by an officer on the basis of information from a victim informer whose reliability is established. The victim informer accuses and the officer swears. Ultimately, the victim informer will have to come forward at the preliminary, then at the trial. This is sufficient safe-

[8] *Id.* at page 631.
[9] (1971), 51 Wis. 2d 270, 277, 187 N. W. 2d 321.

guard to test the question of personal jurisdiction of the particular accused." [10]

Thus the *Knudson Case* is not entirely clear whether the fact of the victim coming forward and being willing to testify at trial under oath is sufficient to credit the information supplied by the victim informant or whether some additional support is needed. The additional support in *Knudson* would be the averment of apprehension of the defendant pursuant to the victim's description.

In several recent cases, however, it becomes clear that if the citizen or victim informant is an eyewitness this will be enough to support probable cause even without specific corroboration of reliability. In *State v. Mansfield* [11] this court said:

". . . This court, anticipating the United States Supreme Court's decision in *Harris,* has placed great emphasis on the informant's OBSERVATION as an element of reliability as well as underlying circumstances. This was made clear in *State v. Paszek* and *State ex rel. Cullen v. Ceci* as well as in *Knudson.* These cases, as well as *United States v. Harris,* support the proposition that observation of the criminal act plus the reliance on the informant by the police are sufficient to support the issuance of a search warrant." (Citations omitted.)

The court in *Mansfield* indicated that the observation was made more reliable by the detailed description given by the informant.

In *Leroux v. State* [12] the court again cited *Harris* and *Mansfield* for the proposition that observation of the criminal act plus reliance on the informant by the police is sufficient to support a finding of probable cause. The *Leroux Case* involved a murder in which a young girl finally came forward with her knowledge of the

[10] *Id.* at page 278.
[11] (1972), 55 Wis. 2d 274, 280, 198 N. W. 2d 634.
[12] (1973), 58 Wis. 2d 671, 207 N. W. 2d 589.

crime. She had previously told a story which the complainant sheriff had not believed. Her second statement comported with his own theories and his knowledge of the defendant's reputation for violence.

And in *Redepenning v. State* [13] a rape complaint was challenged as not sufficiently averring the place where the crime occurred. The defendant claimed the allegations concerning where the crime occurred were based on hearsay and did not show circumstances from which the magistrate could find that the hearsay informant was credible and her information reliable. The court rejected this argument pointing out that the complainant received the information from the two victims both named in the complaint and that "[a]s to where the crime occurred as well as to what took place, '. . . what better basis can there be than . . . eyewitness testimony.' " [14] The court also concluded that it could be inferred from the complaint that the complainant sheriff had also visited the alleged site of the crime and verified by his own observation that it was in Monroe county and not Vernon county.

We conclude that the complaint here being based on the police officer's sworn statement of what the alleged victim described as having actually happened meets the test of reliability of the informer and constituted probable cause for the magistrate to proceed with the issuance of a warrant calling for the arrest of the defendant.

### Alibi defense—abuse of discretion.

The defendant contends that the trial court abused its discretion in refusing to allow the presentation of alibi testimony despite failure to comply with the notice-of-

[13] (1973), 60 Wis. 2d 471, 210 N. W. 2d 673.
[14] *Id.* at page 476, quoting from *State ex rel. Cullen v. Ceci* (1970), 45 Wis. 2d 432, 446, 173 N. W. 2d 175.

alibi statute. Although a new code of criminal procedure became effective on July 1, 1970, the former alibi statute, sec. 955.07, Stats. 1967, applied in these proceedings.[15] Under sec. 955.07 written notice of intention to rely on an alibi defense had to be given to the district attorney on the day of arraignment. The new statute requires such notice to be given on the day of arraignment or at least twenty days prior to trial.

The defendant was represented by three different appointed attorneys during the course of his trial. His first attorney moved to withdraw as counsel on September 17, 1971, which was the original date of the preliminary examination. The motion was granted and another attorney was appointed. Prior to the preliminary examination this second attorney moved to have the complaint dismissed. This motion was denied and the preliminary examination continued. The defendant was bound over for trial and was arraigned on October 22, 1971, at which time he pleaded not guilty. On November 11, 1971, a third attorney was appointed. He represented the defendant until the conviction. On the day of the trial, January 24, 1972, the defendant requested that a new attorney be appointed because he was dissatisfied with the representation of his third attorney. This motion was denied. After a letter was received by the trial judge after conviction, still a fourth attorney was appointed to investigate and to make postconviction motions. That attorney did make a motion for a new trial on numerous grounds, not all of which are raised on this review.

It is apparent from this record that the defendant had difficulty in getting along with any attorney. The problems caused by this apparent conflict with his court-appointed counsel must have been compounded by the

---

[15] *State v. Stewart* (1972), 56 Wis. 2d 278, 201 N. W. 2d 754.

defendant's speech difficulties. The record reveals that the defendant had a severe stuttering problem. Thus it was probably difficult for these various attorneys to do an adequate job of representation if the record does reveal dissatisfaction by the defendant which may have been manifested by lack of cooperation.

His third trial attorney made extensive pretrial motions by which he hoped to suppress evidence of pretrial photographic identification and to show that in-trial identification was tainted. The record which was developed made it clear that this was a futile attempt. It was at this time that the third attorney decided to make some inquiries about the possibility of an alibi defense. The defendant, although he had a record of 14 prior criminal convictions, did not even mention the possibility of an alibi until January 6, 1972.

The trial court could have reasonably concluded here that no "good cause" had been shown for the failure to give the notice at the proper time.[16]

*Constitutional challenge to trial court's decision.*

The fundamental attack that defendant makes on his conviction is that the exclusion of alibi evidence because the required notice was not given violates his sixth amendment right to compel attendance of witnesses in his own behalf, and denies him federal due process under the fourteenth amendment. This position is based on *Wardius v. Oregon.*

This constitutional issue is raised for the first time on this review. Thus the defendant cannot claim review of the issue as of right. We choose, nevertheless, to consider that issue, especially in view of *Wardius.*

[16] *Rider v. Crouse* (10th Cir. 1966), 357 Fed. 2d 317; *State v. Escobedo* (1969), 44 Wis. 2d 85, 170 N. W. 2d 709.

In *Wardius* [17] the United States Supreme Court held that the due process clause forbids enforcement of nonreciprocal notice-of-alibi statutes.

"In the case presently before us, Oregon prevented a criminal defendant from introducing any evidence to support his alibi defense as a sanction for his failure to comply with a notice-of-alibi rule which, on its face, made no provision for reciprocal discovery. . . .

"We hold that the Due Process Clause of the Fourteenth Amendment forbids enforcement of alibi rules unless reciprocal discovery rights are given to criminal defendants. Since the Oregon statute did not provide for reciprocal discovery, it was error for the court below to enforce it against petitioner, and his conviction must be reversed."

The Wisconsin statute applicable at the time, sec. 955.07, is similar to the Oregon nonreciprocal notice-of-alibi statute struck down in *Wardius,* and is, therefore, unconstitutional.

In order to determine whether defendant is entitled to a new trial because sec. 955.07, Stats. 1967, is unconstitutional we must decide to what extent this determination is retroactive.

The criteria for determining if procedural requirements affecting criminal prosecutions should be retroactively applied were discussed in *State ex rel. Johnson v. Cady.* [18] The court must consider (1) the purpose of the rule, (2) the extent of reliance by law enforcement authorities on the old rule, and (3) the effect on the administration of justice of a retroactive application of the new standard.

The retroactivity of a decision is not automatically determined by the provision of the constitution on which the decision is based. "Each constitutional rule of criminal procedure has its own distinct functions, its own

[17] *Supra,* footnote 2, at pages 471, 472.

[18] (1971), 50 Wis. 2d 540, 185 N. W. 2d 306; *State ex rel. La Follette v. Raskin* (1966), 30 Wis. 2d 39, 139 N. W. 2d 667.

background of precedent, and its own impact on the administration of justice, and the way in which these factors combine must inevitably vary with the dictate involved." [19] The supreme court has retroactively applied the right to counsel [20] and its holding that the issue of coerced confessions was not an issue for the jury.[21] On the other hand, the exclusionary rule of *Mapp v. Ohio*,[22] although applied to cases pending at the time of the decision, was not applied to cases which were "final" at that time.[23] The decision which required counsel at identification confrontations was applied prospectively only,[24] as were the *Escobedo* and *Miranda* decisions.[25]

We conclude that under *State ex rel. Johnson v. Cady* this ruling should be retroactive only to the extent of being applied to cases that are not finalized and where the defendant attempted at trial to present alibi evidence and was denied that effort because he had not given notice under sec. 955.07, Stats. 1967.

The failure of the state to supply a list of rebuttal witnesses " 'never assured the [petitioner] a fair determination' of his guilt or innocence." [26] As for the

[19] *Johnson v. New Jersey* (1966), 384 U. S. 719, 728, 86 Sup. Ct. 1772, 16 L. Ed. 2d 882.

[20] *Gideon v. Wainwright* (1963), 372 U. S. 335, 83 Sup. Ct. 792, 9 L. Ed. 2d 799.

[21] *Jackson v. Denno* (1964), 378 U. S. 368, 84 Sup. Ct. 1774, 12 L. Ed. 2d 908.

[22] (1961), 367 U. S. 643, 81 Sup. Ct. 1684, 6 L. Ed. 2d 1081.

[23] *Linkletter v. Walker* (1965), 381 U. S. 618, 85 Sup. Ct. 1731, 14 L. Ed. 2d 601; *La Claw v. State* (1968), 41 Wis. 2d 177, 163 N. W. 2d 147, 165 N. W. 2d 152; *State ex rel. La Follette v. Raskin, supra,* footnote 18.

[24] *United States v. Wade* (1967), 388 U. S. 218, 87 Sup. Ct. 1926, 18 L. Ed. 2d 1149.

[25] *Escobedo v. Illinois* (1964), 378 U. S. 478, 84 Sup. Ct. 1758, 12 L. Ed. 2d 977; *Miranda v. Arizona* (1966), 384 U. S. 436, 86 Sup. Ct. 1602, 16 L. Ed. 2d 694.

[26] *Roberts v. Russell* (1968), 392 U. S. 293, 294, 88 Sup. Ct. 1921, 20 L. Ed. 2d 1100, rehearing denied, 393 U. S. 899, 89 Sup. Ct. 73, 21 L. Ed. 2d 191.

integrity of the fact-finding process, we are not convinced that that process is so adversely affected by the inability to supply alleged alibi evidence that the ruling here should be made retroactive to any greater extent than we have ruled. It is true that the fact-finding process is affected somewhat by eliminating surprise if the increased opportunity to discovery is given. But the existence of a notice-of-alibi statute without reciprocal discovery does not affect the totality of the fact-finding process and does not render the accuracy of the verdict suspect.[27] If the ruling here is confined to cases that are not finalized and where alibi evidence was attempted to be put in despite absence of notice, we conclude that the basic purpose of the rule—to balance the forces of discovery between accused and state—will be served. Reliance has been had on sec. 955.07, Stats. 1967 (or sec. 971.23 (8) in its current form), and such reliance was reasonable.

Applying the ruling as retroactive to the limited extent as allowed herein will not have an adverse effect on the administration of justice. The only defendants who can use the ruling are those (1) whose cases are not finalized, and (2) who attempted to put in alibi evidence despite no notice and preserved that claim of error.

Since this case has not been finalized and defendant has preserved the error by his attempt to put in evidence despite his failure to give alibi notice, the rule would benefit him except for the fact that the error is harmless error. Applying the rule of *Wold*,[28] that error is harmless unless the result would reasonably have been different, we have no doubt that the error here is harmless.

[27] Order No. 71–C–368, December 14, 1973, *Currie v. Schmidt*, United States District Court for the Western District of Wisconsin.
[28] *Wold v. State* (1973), 57 Wis. 2d 344, 204 N. W. 2d 482.

Although the victim left out some obvious distinguishing features (lump on forehead, missing finger on right hand, severe stutter) in her initial description of her assailant to the police, both girls picked out the defendant's photograph in an apparently unassailable identification procedure. The girls had looked over hundreds of photos at the police station without identifying anyone. Then the next day the police presented nine photographs, one of which was of the defendant. Both girls separately identified the defendant's photograph as being of the assailant. The defendant became a suspect because his automobile fitted the description given by both girls and because he fled when approached by the police. A barrette worn by the victim on the day of the attack was found in the defendant's car, as was a knife which she identified as the one wielded by her assailant. Although the victim did not report that her assailant stuttered, she testified that he said very little to her and that what he did say was difficult to understand. It is possible that his stuttering problem would not have been revealed if he spoke only a few short sentences to the victim.

As to the effect of this ruling on the present notice-of-alibi statute, the last sentence of sec. 971.23 (3) (a) providing "This section shall not apply to rebuttal witnesses or those called for impeachment only." is stricken as unconstitutional and since that sentence is severable,[29] sec. 971.23 (3) (a) would read:

"(a) A defendant may, not less than 15 days nor more than 30 days before trial, serve upon the district attorney

---

[29] "990.001 (11) SEVERABILITY. The provisions of the statutes are severable. The provisions of any session law are severable. If any provision of the statutes or of a session law is invalid, or if the application of either to any person or circumstance is invalid, such invalidity shall not affect other provisions or applications which can be given effect without the invalid provision or application."

an offer in writing to furnish the state a list of all witnesses the defendant intends to call at the trial, whereupon within 5 days after the receipt of such offer, the district attorney shall furnish the defendant a list of all witnesses and their addresses whom he intends to call at the trial. Within 5 days after the district attorney furnishes such list, the defendant shall furnish the district attorney a list of all witnesses and their addresses whom the defendant intends to call at the trial."

Thus, sec. 971.23 (8), Stats., is constitutional because after notice of alibi is given the state would have a duty to submit a list of rebuttal witnesses under sec. 971.23 (3) (a). This satisfies the due process requirement of reciprocity.[30]

*By the Court.*—Judgment and order affirmed.

[30] *Wardius v. Oregon, supra,* footnote 2.